# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-23-00398-CV

---

**Jorge Arellano, Appellant**

**v.**

**Magdaleno Villegas, Appellee**

---

**FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-20-001352, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Jorge Arellano appeals from the trial court's final default judgment and denial of his motion for reconsideration of the denial of his motion for new trial. Arellano contends that the evidence was legally insufficient to support the judgment's award of unliquidated damages and that the trial court abused its discretion in denying his motion for new trial. Because we agree with Arellano that the evidence is legally insufficient to support some categories of damages awarded in the judgment, we reverse the judgment in part with respect to those categories, remand for a new trial with respect to those damages and for exemplary damages, and affirm the remainder of the judgment.

## BACKGROUND

In April 2014, Magdaleno Villegas was injured in an automobile collision with Arellano, who was intoxicated at the time. *See Old Am. Cnty. Mut. Fire Ins. v. Villegas*, No. 01-

17-00750-CV, 2019 WL 3121853, at *1 (Tex. App.—Houston [1st Dist.] July 16, 2019, no pet.) (mem. op.).[1]  Villegas sent a demand letter to Arellano's insurer, Old American County Mutual Fire Insurance Company (Old American).  Old American denied Villegas's claim because Arellano had not been sued and because of an exclusion in Villegas's policy.  *See id.*

Villegas then sued Arellano and Maria D. Martinez in late 2014.  Villegas alleged that through Arellano's negligence and gross negligence, and while driving a vehicle negligently entrusted to him by Martinez, Arellano crossed the roadway's double yellow lines and collided head-on with the vehicle he was driving, causing him serious personal injuries.  Villegas further alleged that after the collision, Arellano was arrested for driving while intoxicated (DWI), having previously been convicted twice for DWI.  Villegas pleaded for actual damages as well as exemplary damages for Arellano's alleged gross negligence.

In March 2015, Villegas filed a motion for default judgment against Arellano.  In his motion, Villegas asserted that Arellano's liability was established by his failure to answer and that no evidentiary hearing was necessary to support the unliquidated damages alleged in his petition because courts may award such damages based on affidavits, which he attached, including his own.  Thereafter the trial court signed an interlocutory order granting default judgment against Arellano for his failure to answer.[2]  The judgment awarded the following actual damages: $605.44 for past lost wages; $4,233 for past medical expenses; $15,000 for past mental anguish; $35,000

---

[1] Pursuant to its docket-equalization authority, the supreme court transferred this first appeal from this Court to the First Court of Appeals.  *See Old Am. Cnty. Mut. Fire Ins. v. Villegas*, No. 01-17-00750-CV, 2019 WL 3121853, at *1 n.1 (Tex. App.—Houston [1st Dist.] July 16, 2019, no pet.) (mem. op.).

[2] The default judgment was interlocutory because Villegas's claims against Martinez remained pending.

for past physical impairment; and $50,000 for past pain and suffering. It also awarded $150,000 in exemplary damages.

About seven months after the interlocutory default judgment, the trial court granted Villegas's application for turnover relief, ordering Arellano to "turn over any and all claims or causes of action he may have now or in the future, including but not limited to the *Stowers* action and the failure to defend action, against Old American[.]" In April 2016, Villegas filed an amended petition, asserting claims against Old American "pursuant to the turnover order."

After a bench trial in 2017, the trial court rendered a final judgment, ordering Old American to pay the damages awarded in the default judgment. Old American appealed, and the First Court of Appeals determined that the default judgment was interlocutory because it had not disposed of Villegas's claims against Martinez and that it therefore could not have supported the turnover order, which accordingly was void. *See id.* at *2–3. The appellate court determined that the trial court lacked subject-matter jurisdiction over Villegas's claims against Old American due to his lack of standing, vacated the final judgment, and remanded the case for further proceedings. *See id.* at *4.

Shortly after the cause was remanded, in late 2019, Arellano filed an original answer and a motion to set aside the default judgment and for new trial. In his motion, he argued that he was entitled to a new trial because the motion and his supporting affidavit satisfied the three *Craddock* elements of proof: (1) the defendant's failure to answer resulted from a mistake or accident, not intent or conscious indifference; (2) the motion for new trial sets up a meritorious defense to the plaintiff's claim; and (3) the motion is filed when its granting would not result in a delay or otherwise injure the plaintiff. *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). In his affidavit, Arellano attested,

> Counsel for Plaintiff contacted me and advised that my insurance carrier . . . would handle my defense in the referenced lawsuit if I submitted the suit to my carrier. As a result, I executed a document . . . requesting that my insurance carrier provide me with a defense and turned that . . . paper over to my insurance agent. The document was prepared by counsel for Plaintiff; I merely signed the document and forwarded it to my agent.
>
> It was my understanding based on my communications with counsel for Plaintiff that this was all that I needed to do in this lawsuit. As a result, I did not file an answer on my behalf.
>
> My failure to respond . . . was not intentional or the result of conscious indifference, but a mistake because I relied on the advice of counsel for Plaintiff.

Villegas filed a response, objecting to the affidavit as hearsay. After an evidentiary hearing, at which Arellano did not testify but at which three witnesses for Villegas did, the trial court sustained Villegas's hearsay objection and denied Arellano's motion for new trial. Shortly thereafter, the trial court granted Villegas's motion to sever and motion for entry of final judgment against Arellano. Arellano appealed from the denial of his motion for new trial.

On appeal the Fourteenth Court of Appeals held that Arellano's affidavit was not hearsay and that the trial court abused its discretion in excluding it, reversing the order denying his motion for new trial and remanding for an evidentiary hearing on the motion. *See Arellano v. Villegas*, No. 14-20-00332-CV, 2022 WL 2814874, at *4 (Tex. App.—Houston [14th Dist.] July 19, 2022, pet. denied) (mem. op.).[3] Having determined that a fact issue existed on the first *Craddock* element—based on Arellano's affidavit and because it was the only evidence supporting that element—the appellate court did not reach the other two elements. *See id.* The court also determined that it need not address Arellano's second issue—challenging the sufficiency of the

---

[3] Although not clear from the record, this second appeal was also presumably transferred from this Court to another of our sister courts pursuant to the supreme court's docket-equalization authority.

4

evidence to support the judgment—because it had sustained his issue challenging the exclusion of his affidavit.[4]  *See id.* at *3 n.3.

On remand for the second time and shortly after the Fourteenth Court of Appeals issued its mandate, Arellano filed a motion for reconsideration of the trial court's order denying his motion to set aside and for new trial, again supported by his same affidavit.  In the motion, he argued that the evidence was legally insufficient to support the unliquidated damages awarded in the default judgment and that "the absence of a hearing transcript renders that judgment fatally defective."  He also argued, again, that his motion and supporting affidavit conclusively established the *Craddock* elements required to set aside the default judgment and obtain a new trial.  Regarding the second *Craddock* element—requiring the defendant to set up a meritorious defense to the plaintiff's claim—Arellano contended that some categories of Villegas's damages were unsupported by evidence or were grossly excessive, but he did not assert that he was not liable for the accident.  After a non-evidentiary hearing, the trial court denied Arellano's motion to reconsider, and Arellano perfected this appeal.

## DISCUSSION

In two issues, Arellano contends that (1) the evidence is legally insufficient to support the judgment's award of damages, all of which are unliquidated; and (2) the trial court abused its discretion in denying his motion for new trial.

We begin by addressing Arellano's second issue since it would afford him the most relief (namely, a new trial) and hold that the trial court did not err in denying the motion for new

---

[4] Although in his motion for new trial Arellano did not assert that the evidence was insufficient to support the judgment, those types of challenges may be raised for the first time on appeal in civil nonjury cases.  *See* Tex. R. App. P. 33.1(d).

trial because the motion did not properly set up a *Craddock* meritorious defense. *See* 133 S.W.2d at 126. In his motion, Arellano did not contest liability and made only conclusory allegations related to the sufficiency of the evidence to support some of the categories of damages awarded. He did not, however, (1) allege *facts* "which in law would constitute a defense to the cause of action asserted by the plaintiff" or (2) support such factual allegations "by affidavits or other evidence proving prima facie that the defendant has such meritorious defense." *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 392 (Tex. 1993) (quoting *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966)).

Arellano alleged in his motion, for example, that Villegas's hours of missed work were "excessive" and "not reasonably related to the accident" and that his medical treatment was "not solely related to the accident." But conclusory allegations are not enough to satisfy the *Craddock* factors. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Ivy*, 407 S.W.2d at 215. Furthermore, Arellano's affidavit—the only evidence supporting his motion for new trial—pertained solely to the first *Craddock* factor and did not address the meritorious-defense factor at all. *See Action Powersports, Inc. v. 1STEL, Inc.*, 500 S.W.3d 632, (Tex. App.—Texarkana 2016, no pet.) (holding that allegations in motion for new trial that movant was entitled to offsets and that other party failed to provide promised services were conclusory and not sufficient in absence of any supporting and specific facts). *Cf. Goskie v. Benningfield*, No. 11-02-00107-CV, 2003 WL 188556, at *2 (Tex. App.—Eastland Jan. 16, 2003, no pet.) (mem. op.) (movant's motion, in which she alleged that another driver caused collision, was supported by facts in affidavit and police report and sufficient to set up meritorious defense that she did not cause plaintiff's injuries). Because his motion did not properly set up a meritorious defense, we overrule Arellano's second issue.

6

In addressing Arellano's first issue, we first acknowledge that an evidentiary-sufficiency challenge is distinct from a *Craddock* motion, which the supreme court has "consistently characterized" as an equitable doctrine. *See In re Marriage of Williams*, 646 S.W.3d 542, 545 (Tex. 2022). A *Craddock* motion does not attempt to show an error in the judgment; rather, it seeks to excuse the defaulting party's failure to answer by demonstrating the *Craddock* elements. *Id.* In contrast, a complaint of legally or factually insufficient evidence assails the judgment, seeking to show that it is not supported by evidence presented in the trial court. *Id.* Even if a trial court has not abused its discretion in denying a *Craddock* motion for new trial, it may nonetheless conclude that there was legally insufficient evidence to support the unliquidated damages awarded in the default judgment. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83–86 (Tex. 1992). We will sustain a legal-sufficiency challenge when the record demonstrates (1) a complete absence of a vital fact; (2) that the rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively established the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

When a default judgment is taken against a non-answering defendant, all allegations of material fact properly pleaded in the petition are deemed admitted, except for the amount of unliquidated damages. *See Holt Atherton*, 835 S.W.2d at 83. Unliquidated damages are those "not proved by any written instrument such that the amount of damages can be accurately calculated by the trial court from the instrument and the factual allegations in the plaintiff's petition." *Kao Holdings, L.P. v. Young*, 214 S.W.3d 504, 507 n.2 (Tex. App.—Houston [14th Dist.] 2006), *aff'd as modified*, 261 S.W.3d 60 (Tex. 2008). The trial court must hear evidence of damages unless the damages sought are liquidated and proved by an instrument in writing. Tex.

7

R. Civ. P. 241, 243. Affidavits can satisfy Rule 243's requirement that the court must hear evidence to support unliquidated damages. *See TexPro Constr. Grp., LLC v. Davis*, No. 05-14-00050-CV, 2015 WL 4984856, at *3 (Tex. App.—Dallas Aug. 19, 2015, no pet.) (mem. op.) (citing *Texas Com. Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 517 (Tex. 1999)). The plaintiff must prove by competent evidence both the amount of his unliquidated damages and the causal nexus between the event sued upon and his injuries. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731–32 (Tex. 1984).

Each category of damages awarded in the default judgment here is a type of unliquidated damages. *See Holt Atherton*, 835 S.W.2d at 86 (lost wages); *Ramirez v. BAM! Pizza Mgmt., Inc.*, No. 05-23-00311-CV, 2024 WL 725503, at *3 (Tex. App.—Dallas Feb. 22, 2024, no pet.) (mem. op) (physical impairment and pain and suffering); *PNS Stores, Inc. v. Munguia*, 484 S.W.3d 503, 518 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (mental anguish); *Walker v. Ricks*, 101 S.W.3d 740, 748 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.) (past medical expenses); *Glazener v. Jansing*, No. 03-02-00796-CV, 2003 WL 22207226, at *5 (Tex. App.—Austin Sept. 25, 2003, no pet.) (mem. op.) (exemplary damages). Arellano challenges the legal sufficiency of evidence supporting each category, and we thus consider the record evidence in light of his specific challenges thereto.

### Lost wages[5]

In challenging the legal sufficiency of the $605.44 lost-wages award, Arellano argues that Villegas was required to, but did not, prove what his "actual earnings were before and

---

[5] In his appellee's brief, Villegas informs this Court that he "does not contest Arellano's [evidentiary-sufficiency] complaints about the trial court's award of damages for lost wages, medical expenses, mental anguish[,] and physical impairment" and "requests this Court order a

after the injury." However, the case he cites does not support that proposition but, rather, supports the trial court's award, given the evidence. *See Geoscience Eng'g & Testing, Inc. v. Allen*, No. 01-03-00402-CV, 2004 WL 2475280, at *6 (Tex. App.—Houston [1st Dist.] Nov. 4, 2004, pet. denied) (mem. op.) (distinguishing between past lost wages and loss of future earning capacity and concluding that if plaintiff was employed at time of injury and could prove amount he was making at such time, wages lost due to accident were recoverable). Villegas attested in his affidavit that at the time of the collision, he was employed as a kitchen manager at a specified restaurant, making $14.08 per hour and that, "due to the injuries [he] sustained" in the accident, he "was forced to miss forty-three (43) hours of work." We conclude after reviewing analogous caselaw that this is both legally and factually sufficient evidence of Villegas's lost wages. *See Jackson v. Gutierrez*, 77 S.W.3d 898, 904 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding that similar evidence was factually sufficient to support lost wages); *Transport Concepts, Inc. v. Reeves*, 748 S.W.2d 302, 305 (Tex. App.—Dallas 1988, no writ) (same).

### *Medical expenses*

Arellano challenges the award of $4,233 for past medical expenses by contending that Villegas failed to submit evidence proving that the amounts he sought to recover were actually "paid or incurred" as required by Section 41.0105 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 41.0105; *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 249 (Tex. 2021); *see also Haygood v. De Escabedo*, 356 S.W.3d 390, 391 (Tex. 2011) (noting that

---

remittitur" of the judgment reducing the amount awarded by $54,838.44. He then states that "the only remaining question for this Court to address" concerns the sufficiency of the evidence in support of the awards for Villegas's pain and suffering and exemplary damages. Notwithstanding this concession and remittitur offer, we will address Arellano's challenges to each category of damages.

9

Section 41.0105 limits recovery to expenses to which a provider "has a legal right to be paid"). Arellano contends that Villegas was required to submit evidence demonstrating that the rates charged by his providers were not merely uncollectible list prices ("chargemaster rates") but reflected the negotiated rates that apply when a person is covered by medical insurance, citing *In re K & L Auto Crushers*. *See* 627 S.W.3d at 249–50. But that case does not stand for such proposition. *See id.* Instead, it acknowledges the common-law requirement that charges for medical expenses must be reasonable and recognizes that evidence of a provider's billing practices may bear on that question and is discoverable by the defendant. *See id.* However, Arellano does not cite any authority requiring such evidence for recovery of medical expenses, nor have we found any. We thus consider the sufficiency of the evidence Villegas submitted to support recovery for his medical expenses.

In his affidavit, Villegas averred that he suffered injury and damages as a "direct and proximate result of the collision," and that such damages included medical expenses he incurred in the form of examinations and treatments with specified providers. He attached to his affidavit billing records from his medical providers to prove the amounts that he paid or incurred. The providers' billing records were accompanied by Civil Practice and Remedies Code Section 18.001 affidavits, *see* Tex. Civ. Prac. & Rem. Code § 18.001, in which the affiants specified the amounts that had already been paid for the medical services provided to Villegas as well as the amounts that were unpaid but remained due (i.e., incurred) and to which the providers were legally entitled. The affiants averred that the amounts paid or owed were reasonable, that the services provided were necessary, and that the providers had the "legal right" to be paid those amounts. Section 18.001 affidavits are sufficient, if not controverted by the defendant, to prove the necessity

10

and reasonableness of the medical expenses. *See Rodriguez-Narrera v. Ridinger*, 19 S.W.3d 531, 532–33 (Tex. App.—Fort Worth 2000, no pet.).

In addition to averring about the reasonableness and necessity of the medical expenses, the affiants averred that the providers were legally entitled to be paid the specified amounts, some of which had in fact already been paid. *Cf. Haygood*, 356 S.W.3d at 395–96 (noting that provider had no legal right to be paid amounts billed for medical services because Worker's Compensation Act prohibited recovery above specified reimbursement rates). Villegas's evidence was not controverted. We conclude that the evidence is legally sufficient to support the damages awarded for past medical expenses.

### Mental anguish

Arellano challenges the legal sufficiency of the evidence supporting the trial court's award of $15,000 in mental-anguish damages. To recover mental-anguish damages, a plaintiff must introduce "direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine" or evidence of "a high degree of mental pain and distress that is more than worry, anxiety, vexation, embarrassment, or anger." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). Not only must there be evidence of the existence of compensable mental anguish, but there must also be some evidence to justify the amount awarded. *Gregory v. Chohan*, 670 S.W.3d 546, 563–64 (Tex. 2023) (citing *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996)).

The only evidence supporting mental-anguish damages was one statement in Villegas's affidavit that he suffered "severe personal injuries and damages as a direct and proximate result of the collision," including "past mental anguish." Beyond this conclusory

11

statement, there is no evidence about the nature, duration, or severity of the anguish or of any specific form of mental pain and distress showing that Villegas suffered more than common emotions such as worry or anger, much less is there any evidence that might justify the amount awarded. We sustain Arellano's challenge to the legal sufficiency of the evidence supporting the mental-anguish damages.

### Physical impairment

Arellano contends that the evidence is legally insufficient to support the $35,000 awarded for Villegas's alleged past physical impairment. To recover for physical impairment, a plaintiff must show that the effect of the impairment is "substantial" and extends beyond any pain, suffering, mental anguish, lost wages, or diminished earning capacity because a plaintiff may not be compensated more than once for the same elements of loss or injury. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex. 2003); *Patlyek v. Brittain*, 149 S.W.3d 781, 785–86 (Tex. App.—Austin 2004, pet. denied). Physical impairment encompasses the loss of the injured party's former lifestyle and can include damages for "loss of enjoyment of life." *Patlyek*, 149 S.W.3d at 786. To recover these damages, the plaintiff must prove that the injuries have impeded his ability to engage in specific non-work-related activities, such as sports, hobbies, or recreational activities. *See id.* at 787.

The only evidence supporting physical impairment was the same statement in Villegas's affidavit recited immediately above: that he suffered "severe personal injuries and damages as a direct and proximate result of the collision," including "past physical impairment." There is no evidence about the level of Villegas's impairment or of any specific activities of his

12

that have been impeded. *Cf. id.* We sustain Arellano's challenge to the legal sufficiency of the evidence supporting the physical-impairment damages.

### Pain and suffering

Arellano challenges the judgment's award of $50,000 for Villegas's past pain and suffering by contending that Villegas's conclusory affidavit constituted no evidence of the existence or amount of any pain and suffering he experienced. A plaintiff may prove physical pain and suffering with his testimony or other evidence, including circumstantial evidence. *See Press Energy Servs., LLC v. Ruiz*, 650 S.W.3d 23, 50 (Tex. App.—El Paso 2021, no pet.). In the absence of direct evidence of pain, the factfinder is permitted to infer the occurrence of pain from the nature of the injury. *See id.*

The direct and circumstantial evidence of Villegas's pain and suffering consists of his affidavit and petition. The relevant factual allegations in his petition, which are deemed admitted, *see Holt Atherton*, 835 S.W.2d at 83, include the following: the parties were driving on the 5500 block of Delta Post Drive in Austin in opposite directions when Arellano suddenly crossed the double yellow lines and "slammed" into Villegas's vehicle, causing Villegas to sustain "serious personal injuries and damages." In the affidavit, Villegas avers that "severe personal injuries," including "past physical pain and suffering," resulted from the collision. In addition to the facts deemed in the petition, Villegas describes the collision as occurring when Arellano was intoxicated and suddenly crossed the double yellow line, striking the driver's side of Villegas's vehicle. He avers that he missed forty-three hours of work due to the injuries he sustained, and the billing records attached to his affidavit demonstrate that he had an MRI performed on and X-rays taken of his lumbar spine, had one initial exam and two re-exams performed by a chiropractor,

13

and attended an "E/M Comprehensive" office visit with an orthopedist. The billing records indicate that he received chiropractic manipulations and therapeutic exercises on about thirty occasions over three months.

The process of awarding damages for amorphous, discretionary injuries such as pain and suffering or mental anguish is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss. *Cotton Patch Café v. McCarty*, No. 2-05-082-CV, 2006 WL 563307, at *4 (Tex. App.—Fort Worth Mar. 9, 2006, no pet.) (mem. op.). Likewise, once the existence of some pain and suffering has been established, there is no objective way to measure the adequacy of the amount awarded as compensation. *In re Marriage of Noble*, No. 06-16-00032-CV, 2016 WL 6543654, at *4 (Tex. App.—Texarkana Nov. 4, 2016, pet. denied) (mem. op.). Accordingly, the trier of fact is given broad discretion when determining such damages. *See id.* at *4–5 (concluding that evidence of plaintiff's suffering near-daily abusive assaults by ex-husband such as being kicked and slammed into walls and floors and experiencing daily pain was sufficient to support $200,000 award for past pain and suffering); *Cotton Patch Café*, 2006 WL 563307, at *4 (concluding that plaintiff's testimony that he had never had knee problems before accident and about his needle-like pain in back and legs after accident, plus evidence of MRI showing torn meniscus requiring surgery and physical therapy thereafter, was legally sufficient to support $100,000 award for past and future pain and suffering).

Although the factfinder "cannot simply pick a number and put it in the blank," and there must "be some evidence to justify the amount awarded," *Saenz*, 925 S.W.2d at 614, appellate courts will not set aside an award on appeal unless it is so excessive as to shock the conscience, *see In re Marriage of Noble*, 2016 WL 6543654, at *4. Certain types of injuries have objective manifestations that plainly support an award for pain and suffering—e.g., nerve damage, torn

muscles, and bone fractures—but even in the absence of direct testimony or other evidence of pain, the factfinder is free to draw on common sense and experience to infer the existence of pain from the existence of an injury likely to cause suffering. *See id.* at *5.

While the evidence lacks specificity about the injury that Villegas sustained, it nonetheless supports a finding that he suffered some kind of injury to his lower back, requiring X-rays, an MRI, and multiple visits to a chiropractor, from which a reasonable factfinder could infer the existence of pain lasting at least three months. The trial court, as factfinder, was entitled to draw on common sense and experience about the level of pain and suffering that Villegas experienced—which he described as "severe"—especially considering that Villegas's pain and suffering was the result of a head-on automobile collision requiring him to receive three months of frequent chiropractic care. We conclude that the evidence is legally sufficient to support the trial court's award and that the award is not so excessive as to shock the conscience. *See id.* at *4; *see also Smith v. Carter*, No. 13-11-00639-CV, 2012 WL 3252499, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 9, 2012, pet. denied) (mem. op.) (concluding that award of $18,500 for past pain and suffering and mental anguish was not excessive to compensate plaintiff who experienced pain in neck and back following auto accident); *Dawson v. Briggs*, 107 S.W.3d 739, 751 (Tex. App.—Fort Worth 2003, no pet.) (concluding that award of $25,000 in future pain and suffering was not excessive to compensate motorist in rear-end car accident who suffered pain in back and neck as result); *Transport Concepts*, 748 S.W.2d at 305 (concluding that, despite there being no medical documentation in record, plaintiff's testimony as to pain he suffered from rear-end auto collision constituted legally sufficient evidence to support $25,000 award). We overrule Arellano's challenge to the judgment's award for past pain and suffering.

15

*Causal connection*

In addition to challenging the existence and amount of Villegas's alleged actual damages, Arellano contends on appeal that there is no evidence of the requisite causal connection between Villegas's injuries and the accident. *See Morgan*, 675 S.W.2d at 732. We disagree.

In his affidavit, Villegas averred that he suffered "severe personal injuries and damages as a direct and proximate result of the collision" and that he was "forced to miss forty-three (43) hours of work" "[d]ue to the injuries he sustained." Courts have held such evidence legally and factually sufficient of the required causal nexus. *See, e.g.*, *Jackson v. Gutierrez*, 77 S.W.3d 898, 902 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (concluding that plaintiff's testimony that she went to hospital, met with doctors, received treatment, lost wages, and had pain and anguish "as a result of the accident" constituted legally and factually sufficient evidence of required causal nexus). We accordingly overrule Arellano's challenge regarding the requisite causal connection.

*Exemplary damages*

Arellano lastly challenges the trial court's award of $150,000 in exemplary damages, arguing that (1) there is no evidence that he was "grossly negligent," a required element of such an award; and (2) the award is not "reasonably proportioned" to actual damages. Exemplary damages may be awarded if the claimant proves by clear and convincing evidence that the harm with respect to which he seeks recovery results from gross negligence, *see* Tex. Civ. Prac. & Rem. Code §§ 41.001(11) (defining gross negligence), .003(a) (setting out evidentiary burden), and the exemplary damages must be "reasonably proportioned to actual damages," *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981).

16

As we have already noted, all factual allegations in Villegas's petition were deemed admitted by Arellano's default. Those allegations included the following:

> At the time of the collision . . . Arellano was driving in such a manner and under such a condition as to create an extreme risk by his reckless disregard of the rights of other motorists. . . . [He], although aware of the risk to the rights, safety, and welfare of other motorists, which are concurrent with driving while intoxicated and driving recklessly, disregarded said risks and drove a motor vehicle recklessly while intoxicated.

> . . . Arellano was certainly aware of the rights, welfare and safety of other motorists, which are concurrent with driving while intoxicated and driving recklessly, given that he had previously been convicted of Driving While Intoxicated on May 13, 2011 . . . and again for Driving While Intoxicated—Second on April 12, 2012.

As with Arellano's deemed liability for ordinary negligence, the above factual allegations are legally sufficient to prove his liability for gross negligence. *See Aim-Ex Indus., Inc. v. Slover*, No. 07-09-0184-CV, 2010 WL 2136599, at *3 (Tex. App.—Amarillo May 19, 2010, pet. denied) (mem. op.) (overruling appellant's contention that there was no evidence of gross negligence because "the default judgment relieved the [plaintiffs] from establishing their opponent's gross negligence. That is, gross negligence was effectively admitted due to the default."); *Folsom Invs., Inc. v. Troutz*, 632 S.W.2d 872, 877 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.) ("There was no requirement to prove defendants' liability for gross negligence when default judgment was taken. Defendants' admissions by default precludes the assignment of evidentiary points of error . . . [and] appellants are deemed grossly negligent."). We thus overrule Arellano's first argument challenging the exemplary-damage award.

Arellano's second argument—concerning the proportionality of the exemplary-damage award—is that $150,000 is thirty times the amount of "actual damages," which he contends are less than $5,000 (consisting of only medical expenses and lost wages), and that such

17

award is excessive "as a matter of law." This argument fails in two respects, however. Firstly, the trial court's award of actual damages was not less than $5,000 but was more than $100,000. Thus, the award was not thirty times the actual damages but only one-and-a-half times the amount. *Cf. Nagel Mfg. & Supply Co. v. Ulloa*, 812 S.W.2d 78, 79, 81–82 (Tex. App.—Austin 1991, writ denied) (holding that exemplary-damage award of twice amount of actual damages was reasonably proportionate to actual damages). Secondly, Arellano does not cite any authority supporting his argument that the award is unreasonably disproportionate to actual damages.

However, because we have determined that about half of the total actual damages awarded—i.e., $50,000 ($35,000 for physical impairment and $15,000 for mental anguish)—is unsupported by legally sufficient evidence, we vacate the award of exemplary damages and remand the issue to the trial court to reconsider the amount of exemplary damages, if any, to assess. *See Lisle v. DO-MO Joint Venture*, No. 05-22-00236-CV, 2023 WL 6226160, at *11 (Tex. App.—Dallas Sept. 26, 2023, pet. denied) (mem. op. on reh'g) (remanding award of exemplary damages due to "significant reduction in actual damages," which "changes the ratio between actual damages and exemplary damages awarded unless the exemplary damages are reassessed").

Texas Rule of Appellate Procedure 44.1(b) provides that when liability is contested, the Court may not order a separate trial solely on unliquidated damages. *See* Tex. R. App. P. 44.1(b). However, when a defendant appeals a no-answer default judgment, liability is not contested for purposes of this rule. *See Full of Faith Christian Ctr., Inc. v. May*, No. 05-20-00859-CV, 2022 WL 3273726, at *7 (Tex. App.—Dallas Aug. 11, 2022, pet. denied) (mem. op.); *Fleming Mfg. Co. v. Capitol Brick, Inc.*, 734 S.W.2d 405, 408 (Tex. App.—Austin 1987, writ ref'd n.r.e.) (applying predecessor rule). Therefore, we reverse the awards of damages for mental anguish, past physical impairment, and exemplary damages and remand for a new trial on those categories

18

of damages only. *See* Tex. R. App. P. 44.1(b); *Holt Atherton*, 835 S.W.2d at 86 (noting that remand for new trial on unliquidated damages is appropriate disposition when appellate court sustains no-evidence point after uncontested hearing on unliquidated damages following no-answer default).

**CONCLUSION**

We affirm the judgment, in part, as to liability and the damages awarded for lost wages, medical expenses, and pain and suffering. However, having concluded that the evidence is legally insufficient to support the trial court's award of damages for mental anguish and past physical impairment, we reverse the award of those damages and remand for a new trial on those categories of damages. We also reverse the trial court's award of exemplary damages and remand for a new trial on those damages due to our reversal of the mental-anguish and physical-impairment awards.

_____

Karin Crump, Justice

Before Justices Triana, Kelly, and Crump

Affirmed in Part; Reversed and Remanded in Part

Filed: January 24, 2025